IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JOSEPH WILLIAM LUSTER,  )
                        )
            Plaintiff,  )
                        )
        v.              )  C.A. No. 18-503 (MN)
                        )
PURACAP LABORATORIES, LLC, )
                        )
            Defendant.  )

## MEMORANDUM OPINION

Brian C. Ralston, Jacob R. Kirkham, POTTER ANDERSON & CORROON LLP, Wilmington, DE – attorneys for Plaintiff

David A. Dorey, Adam V. Orlacchio, BLANK ROME LLP, Wilmington, DE – attorneys for Defendant

December 10, 2018
Wilmington, Delaware


NOREIKA, U.S. DISTRICT JUDGE:

Pending before the Court is the motion of Defendant PuraCap Laboratories, LLC ("PuraCap") to dismiss Count III of the Complaint filed by Plaintiff Joseph William Luster ("Plaintiff") arguing Plaintiff has failed to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). (D.I. 4). For the reasons set forth below, the Court will GRANT Defendant's motion.

I. **BACKGROUND**

A. **The Consulting Agreement**

The dispute in this case relates to a Consulting Agreement dated March 31, 2016 ("the Agreement") entered into by Plaintiff and PuraCap. (D.I. 1, Ex. A ¶¶ 1, 7). Plaintiff alleges that, "[u]nder the terms of the Agreement, [he] was to provide certain consulting services" and "was to receive a fee for such services, as well as additional performance compensation." (*Id.* ¶ 7). Specifically, Plaintiff alleges that Schedule 2 of the Agreement requires PuraCap "to make certain payments under the 'Journey Medical Contract' and 'Additional Government Contracts.'" (*Id.* ¶¶ 8-10). Plaintiff further alleges that the Agreement entitles him to inspect "the relevant books and records of [PuraCap] as may be reasonably necessary to determine and/or verify the amount of the applicable Performance Compensation Payment due." (*Id.* ¶ 14).

B. **The Current Dispute**

Plaintiff alleges that, on November 30, 2017, he "requested via letter that he, and his external accounting firm, be provided access to the relevant books and records in order to determine the amount of the Performance Compensation Payment due to him" and, further, that he followed up on that request in December 2017. (D.I. 1 ¶ 15). He alleges that despite his requests, "[t]o date, although PuraCap has provided limited books and records in the form of summary spreadsheets to Luster, it has not provided all books and records 'reasonably necessary

1

to determine and/or verify the amount of the applicable Performance Compensation Payment due . . . .'" (*Id.* ¶ 16). Plaintiff does not specify the additional materials that he seeks. Plaintiff also alleges that PuraCap has failed to pay him the Performance Compensation owed and has improperly restricted his access to PuraCap's facilities due to a dispute between PuraCap and two of Plaintiff's companies. (*Id.* ¶¶ 13, 17).

On March 13, 2018, Plaintiff sued Defendant in the Delaware Court of Chancery, alleging the following three claims: (1) specific performance compelling PuraCap to provide Plaintiff with books and records related to the calculation of his Performance Compensation; (2) breach of contract for failure to pay Plaintiff the Performance Compensation purportedly owed; and (3) breach of the implied covenant of good faith and fair dealing based on PuraCap: (a) improperly including certain of PuraCap's expenses in its calculation of "Net Profits," adversely impacting Plaintiff's Performance Compensation and (b) restricting Plaintiff's access to PuraCap's facilities. (*Id.* ¶¶ 18-42).

On April 4, 2018, PuraCap removed the action to this Court. On April 11, 2018, PuraCap filed the instant motion to dismiss. (D.I. 4). On April 25, 2018, Plaintiff responded to the motion. (D.I. 8). The Court has considered the Complaint, with attachments, and the parties briefing in connection with the motion.

## II. <u>LEGAL STANDARDS</u>

### A. Motion to Dismiss

When reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court conducts a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the Court separates the factual and legal elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions." *Id.* at 210-11. Second, the Court

determines "whether the facts alleged in the complaint are sufficient to show . . . a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)). The Court may grant a motion to dismiss only if, after "accepting all well pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, [the] plaintiff is not entitled to relief." *Id.*

To survive a motion to dismiss, a complaint cannot rely on labels, conclusions, "and a formulaic recitation of the elements of a cause of action," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 644, 555 (2007), but instead "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (citing *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010)). A claim is facially plausible where "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Further, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of the plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotations omitted). Lastly, "[i]n deciding a Rule 12(b)(6) motion, a court must consider *only* the complaint, exhibits attached to the complaint, matters of public record, as well as undisputed authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (emphasis added).

3

## B. Implied Covenant of Good Faith and Fair Dealing

In Delaware, the implied covenant of good faith and fair dealing requires "a party in a contractual relationship to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits of the bargain." *Dunlap v. State Farm Fire and Cas. Co.*, 878 A.2d 434, 442 (Del. 2005) (internal quotation marks omitted). To advance a claim for breach of the implied covenant:

> [A] plaintiff must allege [1] a specific implied contractual obligation, [2] a breach of that obligation by the defendant, and [3] resulting damage to the plaintiff. The implied covenant, however, only applies where a contract lacks specific language governing an issue and the obligation the court is asked to imply advances, and does not contradict, the purposes reflected in the express language of the contract. Where the contract specifically addresses the issue complained of, [e]xisting contract terms control, [and] implied good faith cannot be used to circumvent the parties' bargain, or to create a free-floating duty . . . unattached to the underlying legal document.

*Haney v. Blackhawk Network Holdings, Inc.*, C.A. No. 10851-VCN, 2016 WL 769595, at *8 (Del. Ch. Feb. 26, 2016) (internal quotation marks omitted); *see also Dunlap*, 878 A.2d at 441 ("[O]ne generally cannot base a claim for breach of the implied covenant on conduct authorized by the terms of the agreement.").

## III. DISCUSSION

In his Complaint, Plaintiff alleges that PuraCap breached its duty of good faith and fair dealing by: (1) "improperly including as costs for the computation of 'Net Profits,' expenses born by PuraCap that should not be included in the computations for [Plaintiff's] performance compensation"; and (2) sending him a letter on March 7, 2018 ("the March 2018 Letter") that unreasonably restricted Plaintiff's access to PuraCap's facilities. (D.I. 1, Ex. A ¶¶ 37-39). For the reasons discussed below, neither of these allegations state a claim on which relief may be granted.

4

### 1. The Calculation of "Net Profits"

Plaintiff contends that PuraCap breached the duty of good faith and fair dealing by including unidentified expenses as PuraCap costs when calculating Net Profits, and that this adversely affected the computation of Plaintiff's Performance Compensation. (*Id.* ¶¶ 37-38). "Net Profits" is a defined term in Schedule 2 of the Agreement:

> *"Net Profits"* means the net revenues actually received by Company or its affiliates under the relevant contract for the relevant period minus the sum of the following additional costs applicable to such contract (whether incurred by Company or its affiliates): (i) raw material, (ii) direct labor, (iii) indirect labor (allocated by unit volume), (iv) indirect overhead (allocated by unit volume), (v) freight, (vi) distribution, and (vii) selling, general, and administrative expenses (SG&A) (allocated by unit volume) Net revenues shall take into account chargebacks, rebates, returns, and other reductions if they should apply consistent with the calculation of net revenues by the Sellers for the fiscal year ending December 31, 2015. For the purpose of this calculation Net Profits shall not be reduced by product development costs, research and development costs, technical transfer costs, or corporate allocations. For the CDC Contract only CAPEX specific to the project will be charged to the calculation as an amortized expense (amortization schedule equals 7 years). An example of the method by which Net Profits is to be calculated appears as Exhibit 1.11 to this Schedule 2.

(D.I. 1, Ex. A, Ex. 1 at Schedule 2 ¶ 1.11).

An implied covenant of good faith and fair dealing applies only where a contract lacks specific language governing an issue. *See Haney*, 2016 WL 769595, at *8 ("Where the contract specifically addresses the issue complained of, [e]xisting contract terms control, [and] implied good faith cannot be used to circumvent the parties' bargain . . . ." (internal quotation marks omitted)). Here, however, the calculation of Net Profits is specifically addressed by the Agreement. Plaintiff acknowledges that definition but asserts that the definition "does not address the arbitrary inclusion of costs and expenses by PuraCap that are not explicitly covered in the definition of 'Net Profits.'" (D.I. 8 at 8). The Court disagrees. The definition of "Net Profits" identifies the costs and expenses to be included. If a cost or expenses is included in the list, it is proper. If it is not, then it cannot be included in the calculation of "Net Profits."

5

Plaintiff has not identified the purported costs or expenses that he contends PuraCap improperly included in its calculation. Nor has he alleged in his Complaint that they are costs not included in the definition above. No matter what the complained of costs or expenses may be, however, the alleged failure to properly calculate and pay "Net Profits" is governed by an express term in the Agreement and, therefore, is not the basis for an implied breach of duty claim. Thus, Plaintiff's claim for breach of the implied covenant of good faith and fair dealing based on PuraCap's calculation of Net Profits must be dismissed.

### 2. Access to PuraCap's Facilities

Plaintiff alleges that PuraCap also breached its implied duty of good faith when PuraCap sent its March 2018 letter, which "unreasonably restricted [his] access to PuraCap's facilities" and prevented him "from meeting his obligations under the Agreement." (D.I. 1, Ex. A ¶¶ 39-40). The letter states that, given Plaintiff's decision to sue PuraCap and his "refusal to pursue a more amicable course," PuraCap requested:

> that [Plaintiff] not enter any PuraCap facility, including the Kentucky facility, except in the event that he has made an appointment in advance with a particular PuraCap employee in connection with services he is required to provide under his Consulting Agreement with PuraCap, and, then, PuraCap asks that [Plaintiff] only remain in the facility for so long as necessary to attend such meeting.

(D.I. 1, Ex. A, Ex. 5 at 1-2).[1] The letter by its terms does not restrict Plaintiff's ability to perform services under the Agreement. To the contrary, it permits Plaintiff access if "he has made an appointment in advance." (*Id.*). Moreover, Plaintiff has not identified any provision of the Agreement – express or implied – that affords him unfettered access to PuraCap's facilities at any

---

[1] Plaintiff attached the March 2018 Letter as an Exhibit to his Complaint, and thus it may be considered in connection with the motion to dismiss. *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.").

6

time he pleases, or that would otherwise plausibly support the claim that PuraCap acted in bad faith by asking him to notify PuraCap before entering its premises.

Moreover, Plaintiff has not alleged any instance in which he sought, and was denied, access to PuraCap's facility to perform any function under the Agreement, nor has he identified any contractual obligation that would be hindered by having to make an appointment to visit a PuraCap facility. Accordingly, Plaintiff has failed to state a claim for breach of the implied covenant of good faith and fair dealing based on PuraCap's request for advance notice of Plaintiff entering its premises, and this claim must also be dismissed.

## IV. **CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendant's motion to dismiss Count III of the Complaint for failure to state a claim (D.I. 4) without prejudice. An appropriate order will follow.