## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JOSEPH WILLIAM LUSTER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| and | ) |
| | ) |
| SHARON BIGAY LUSTER, | ) |
| | ) C.A. No. 18-503-MN-JLH |
| Plaintiff-Intervenor, | ) |
| | ) |
| v. | ) |
| | ) |
| PURACAP LABORATORIES, LLC, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| JHL PHARMACEUTICALS, LLC, f/k/a BLU PHARMACEUTICALS, LLC, and BLU CARIBE, INC., | ) |
| | ) |
| | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) C.A. No. 18-553-MN-JLH |
| | ) |
| PURACAP LABORATORIES, LLC, AND CARIBE HOLDINGS (CAYMAN) CO., LTD., | ) |
| | ) |
| | ) |
| | ) |
| Defendants/Counterclaimants. | ) |
| | ) |
| JOSEPH WILLIAM LUSTER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 19-1522-MN-JLH |
| | ) |
| PURACAP PHARMACEUTICAL, LLC, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM OPINION**

Brian C. Ralston, POTTER ANDERSON CORROON LLP, Wilmington, Delaware.

Benjamin J. Lewis, Amanda D. Reed, DENTONS BINGHAM GREENEBAUM LLP, Louisville, Kentucky.

     Attorneys for Plaintiffs


Brandon W. McCune, BLANK ROME LLP, Wilmington, Delaware.

John P. Wixted, Jason A. Snyderman, BLANK ROME LLP, Philadelphia, Pennsylvania.

     Attorneys for Defendants

**JENNIFER L. HALL, U.S. MAGISTRATE JUDGE**

This is the Court's ruling on Defendants PuraCap Laboratories, LLC, Caribe Holdings (Cayman) Co., Ltd., and PuraCap Pharmaceutical, LLC's Motion to Enforce Settlement Agreement (C.A. No. 18-503, D.I. 144; C.A. No. 18-553, D.I. 124; C.A. No. 19-1522, D.I. 44) and Plaintiff Joseph William Luster's Motion for Attorneys' Fees and Costs (C.A. No. 18-503, D.I. 143; C.A. No. 19-1522, D.I. 41).[1]   I held a hearing on the pending motions on October 7, 2021. ("Tr. __.") For the reasons stated below, Defendants' motion is GRANTED-IN-PART and DENIED-IN-PART, and Plaintiff Luster's motion is DENIED.

## I.       BACKGROUND

These three cases arise from Plaintiffs' 2016 sale of a pharmaceutical business to Defendants PuraCap Laboratories, LLC ("PuraCap Labs"), PuraCap Phamaceutial LLC ("PuraCap Pharma"), and Caribe Holdings Co. ("Caribe"). The transaction included an Asset Purchase Agreement and a Consulting Agreement. (*See* D.I. 58, Ex. 1.)

After Defendants failed to perform in accordance with those agreements, Plaintiffs filed three separate suits: (1) a breach of contract action against PuraCap Labs for failure to pay certain Performance Compensation Payments due under the Consulting Agreement (C.A. No. 18-503 ("Consulting Agreement Case")); (2) the same breach of contract claim against PuraCap Pharma, as PuraCap Labs' contractual guarantor (C.A. No. 19-1522 ("Guaranty Case")); and (3) an action seeking a declaration that certain funds placed in escrow pursuant to the Asset Purchase Agreement should be released to an LLC controlled by Mr. Luster (C.A. No. 18-553 ("Escrow Case")).

---

[1] The parties have consented to disposition of the motions by a Magistrate Judge. C.A. No. 18-503, D.I. 148, 162; C.A. No. 18-553, D.I. 126; C.A. No. 19-1522, D.I. 46, 60; *see* 28 U.S.C. § 636(c)(1); Fed. R. Civ. P. 73.

Unless otherwise indicated, further citations to the docket refer to C.A. No. 18-503.

In March 2021, the parties to the Consulting Agreement Case and the Guaranty Case agreed to the entry of consent judgments in favor of Mr. Luster.  (C.A. No. 18-503, D.I. 134, 137; C.A. No. 19-1522, D.I. 34, 35.)  On March 25, 2021, a "Final Judgment in Favor of Plaintiff Joseph William Luster" was entered in both cases.  It stated, in pertinent part:

> 1. Judgment is entered in favor of Plaintiff Joseph William Luster ("Mr. Luster"), and jointly and severally against Defendants PuraCap Laboratories LLC ("PuraCap Labs") and PuraCap Pharmaceutical LLC (collectively the "PuraCap Defendants"), in the amount of $2,024,218.19;
> 2. Within thirty (30) days of entry of this Judgment, Mr. Luster may submit a Bill of Costs, and may also file a motion for entry of a supplemental judgment seeking an additional award of prejudgment interest and attorneys' fees, and to determine post-judgment interest rates;
> 3. This Judgment is entered in satisfaction of all Performance Compensation Payments and Base Fees claimed by Mr. Luster through March 31, 2020 pursuant to his March 31, 2016 Consulting Agreement with PuraCap Labs. For the avoidance doubt, this Judgment precludes any additional claims by Mr. Luster to any compensation under the Consulting Agreement (including any compensation related to claims for alleged wrongful termination) that allegedly became due and owing prior to March 31, 2020.
> . . .

(D.I. 137.)[2]

Meanwhile, the parties continued to litigate the Escrow Case, which concerned $1,902,944.87 that had been placed in escrow in connection with the Asset Purchase Agreement.  Defendants claimed that Plaintiffs JHL Pharmaceuticals, LLC and Blu Caribe, Inc. (collectively, the "Blu Parties") were not entitled to the escrow funds because the property was in materially worse shape than Mr. Luster had represented and encumbered by liens from invoices that Mr. Luster had failed to pay.  (C.A. No. 18-553, D.I. 62.)

---

[2] A separate consent judgement was entered in the Consulting Agreement Case in favor of Plaintiff-Intervenor Sharon Bigay Luster.  (D.I. 136.)

On the eve of trial in the Escrow Case, the parties participated in a settlement conference moderated by the trial judge.  It is undisputed that, prior to and during the settlement conference, Defendants represented that they were unable to pay the consent judgment from the Consulting Agreement and Guaranty cases in a lump sum, and Defendants threatened to declare bankruptcy if Mr. Luster attempted to immediately collect those funds.  (D.I. 145, Ex. 2 ¶ 4; D.I. 146, Ex. 5 ¶ 20.)  After negotiations, Plaintiff Mr. Luster, Plaintiffs Blu Parties,[3] and Defendants agreed on terms to resolve the Escrow Case as well as open issues in the Consulting Agreement and Guaranty Cases (including Mr. Luster's ability to seek attorney's fees and interest in those cases).  A term sheet was circulated, which provided (in its entirety) as follows:

> **18-553 Escrow Action**
> **18-503 Performance Compensation Action**
> **19-1522 Guarant[y] Action**
>
>    [1] Parties agree to split the funds in the escrow account equally, and both parties will instruct the escrow agent to release the funds.
>    If the funds are released on or before Friday April 9, 2021, the parties will inform the court.
>    If the funds are not released on or before Friday April 9, 2021 and assuming Plaintiff has instructed the escrow agent to release them, the parties will contact the court and request that the court enter a consent judgment awarding $1.8 million dollars to Plaintiff (Blu Parties).
>    [2] The doxycycline ANDA and the plant will be used to securitize the consent judgment. The specifics will be further determined by the parties and their counsel.
>    [3] The parties will release all claims for attorneys' fees related to the 18-553 case and the 18-503 and 19-1522 cases for which a consent judgment was previously entered by the court.
>    [4] As a payment plan for the $2,024,218.19 consent judgment in favor of Bill Luster in the 18-503 and 19-1522 cases, PuraCap will pay Bill Luster $1 million within 7 days of receiving the funds from the escrow account. The remaining amount of $1,024,218.19 will be paid over a period of 18 months with a 3% interest rate, the calculation of which shall be agreed upon. Bill

---

[3] Plaintiff-Intervenor Sharon Luster did not participate in the settlement conference, nor is she a party to any of the pending motions.

Luster will release claims for pre-judgment interest and post-judgment interest in the 18-503 and 19-1522 cases, subject to reinstatement should the balance of $1,024,218.19 plus interest not be paid within 5 days of the end of the 18 month term. Should pre- and post-judgment interest become an issue, the parties may submit papers to the Court regarding the correct amounts for each.

[5] PuraCap will pay Bill Luster the March 2021 Performance Compensation Payment within 7 days of receiving the funds from the escrow account.

[6] If future Performance Compensation Payments are more than 3 weeks late, Bill Luster may contact the Court and request an Order directing payment from the Journey contract to Bill Luster.

[7] Bill Luster will forbear collection efforts on the Performance Compensation Payments due under the consent judgment subject to the terms of this agreement and the 18 month period specified herein.

[8] The parties will release all claims and counterclaims regarding the 18-553, 18-503, and 19-1522 cases except as otherwise specified herein.

(D.I. 146, Ex. 2 ("March 31 Term Sheet") (numbering added for ease of reference).)  There is no dispute that the settlement terms in the March 31 Term Sheet were reviewed and approved by the parties and their counsel.  (D.I. 146, Ex. 5; *see also* Tr. 5:12–15, 15:9–14, 33:18–34:2.)  The trial in the Escrow Case was then cancelled (consistent with term [8]).

The parties continued to perform in accordance with the terms in the March 31 Term Sheet. On April 7, 2021, they jointly instructed their escrow agent to distribute the escrow funds, which were released on April 8, 2021 (in accordance with term [1]).  (D.I. 146, Ex. 4, Ex. 5 ¶ 7.)  Then, on April 15, 2021, Defendants paid Mr. Luster $1,242,536.68—which, according to Defendants, consisted of $1,000,000 for the consent judgment and $242,536.68 for the March 2021 Performance Compensation Payment (in accordance with terms [4] and [5]).  (*Id.*, Ex. 5 ¶ 9.)  On April 30, 2021, Defendants paid Mr. Luster $58,261.67 as the first installment of the $1,024,218.19 remaining on the consent judgment, which (per term [4]) Defendants agreed to pay over a period

of 18 months with a 3% interest rate. Defendants made another payment of $58,261.67 on May 28, 2022. (*Id.*, Ex. 5 ¶ 10.) Mr. Luster accepted all of those payments.

Meanwhile, the parties' counsel negotiated and circulated drafts of a formal, written "Settlement Agreement" to document their agreement on the terms in the March 31 Term Sheet and to finalize some remaining details. One sticking point concerned a dispute over the legal instruments that would give Mr. Luster a security interest for the almost $1 million consent judgment balance (as required by term [2]). Rather than continue to negotiate how the security interest would be provided, Defendants raised additional capital from their investors to pay off the remaining balance in a lump sum. (*Id.*, Ex. 5 ¶¶ 12–18.) On June 18, 2021, Defendants paid Mr. Luster $914,112.17, which the parties do not dispute equaled the remaining balance of the consent judgment plus 3% interest that had accrued as of that date. (*Id.*; Tr. 14:11–16.) Mr. Luster accepted that payment without complaint.

On June 21, 2021, the trial judge held a status teleconference. Plaintiffs do not dispute that, in discussing why the Settlement Agreement had not been finalized and executed, the only substantive issue raised by Plaintiffs' counsel was whether Mr. Luster was entitled to a security interest with respect to future performance compensation payments. (*See* D.I. 146 at 9; Tr. 21:2–13.) No one suggested that the other settlement payments had not been made.

On June 25, 2021, Plaintiffs' counsel circulated a new draft of the Settlement Agreement, which had been revised to reflect that all of the settlement payments had been made. (D.I. 146, Ex. 6.) On June 28, 2021, counsel for the parties agreed on the final language for the Settlement Agreement, subject to final review by their clients. (*Id.*, Ex. 7.)

On July 7, 2021, Plaintiffs' counsel proposed that the language of the draft Settlement Agreement be amended to suggest that the escrow funds were the source of most of the payment

previously made to Mr. Luster on April 15, 2021.[4] (*Id.*)  Unwilling to accept Plaintiffs' proposal and believing that the parties were at an impasse, Defendants filed the pending Motion to Enforce Settlement Agreement.  (C.A. No. 18-503, D.I. 144; C.A. No. 18-553, D.I. 124; C.A. No. 19-1522, D.I. 44.)  The same day, Mr. Luster filed a "Motion for Attorneys' Fees and Costs under the March 2021 Final Judgment" in the Consulting Agreement and Guaranty Cases.  (C.A. No. 18-503, D.I. 143; C.A. No. 19-1522, D.I. 41.)

Defendants argue that the parties formed an agreement to resolve all three cases and that the Court should enforce the parties' agreement.  Defendants argue that Mr. Luster's request for attorney's fees, costs, and interest should be denied because the parties' agreement included a release of all claims, including claims for attorney's fees (term [3]).

Plaintiffs admit that they took the steps to form an enforceable agreement at the settlement conference, but they argue that the agreement is either void or voidable.  Plaintiffs thus request that the Court deny Defendants' motion to enforce the agreement and grant Mr. Luster's motion for attorney's fees, costs, and interest in the Consulting Agreement and Guaranty Cases.

## II.   LEGAL STANDARD

A motion to enforce a settlement agreement is essentially a motion for summary judgment.  *See Tiernan v. Devoe*, 923 F.2d 1024, 1031–32 (3d Cir. 1991).  Accordingly, the Court should grant the motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Tiernan*,

---

[4] Defendants surmise that Mr. Luster proposed the change to receive a tax benefit and that it might also allow him to keep the entire settlement without having to pay a share to Mrs. Luster as part of their divorce.  Defendants express concern that the proposed change might subject them to liability to Mrs. Luster.

923 F.2d at 1032.  If there is a genuine dispute of material fact, the Court should hold an evidentiary hearing on the disputed issues. *See Tiernan*, 923 F.2d at 1031.

## III.   DISCUSSION

Defendants want the Court to enforce the parties' agreement to settle these three actions. Plaintiffs do not dispute that the March 31 Term Sheet set forth sufficiently definite terms and that the parties manifested their intent to be bound by them.[5]  Instead, Plaintiffs contend that any agreement reached by the parties on March 31, 2021 is voidable and/or void.  It's voidable, Plaintiffs say, because Defendants fraudulently induced Plaintiffs to enter into it.  Plaintiffs also argue that the agreement is void for lack of consideration.

Plaintiffs have never contended that Defendants' motion to enforce should be denied on the basis that there is a genuine dispute of material fact.[6]  Nor have Plaintiffs requested an evidentiary hearing.  Accordingly, Defendants' motion to enforce will be decided on the record currently before the Court.

### A.   Fraudulent Inducement

The parties agree that Delaware law applies to the Court's interpretation and enforcement of any agreement to settle this matter.  (D.I. 146 at 12; D.I. 152 at 2.)  Under Delaware law, fraud in the inducement renders a contract voidable at the election of the innocent party.  *Lincoln Nat.*

---

[5] *See Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1158 (Del. 2010) ("[A] valid contract exists when (1) the parties intended that the contract would bind them, (2) the terms of the contract are sufficiently definite, and (3) the parties exchange legal consideration."); *see also Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 582 (3d Cir. 2009) ("[P]arties may bind themselves contractually although they intend, at some later date, to draft a more formal document.") (interpreting Pa. law).

[6] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 326 (1986) (holding that a party seeking to avoid summary judgement by raising a genuine dispute of material fact must either come forward with their evidence or set out in an affidavit why they cannot present evidence of a genuine dispute yet).

*Life Ins. Co. v. Joseph Schlanger 2006 Ins. Tr.*, 28 A.3d 436, 441 (Del. 2011). "The elements of fraudulent inducement are the same [as] those of common law fraud." *LVI Grp. Invs., LLC v. NCM Grp. Holdings, LLC*, No. 12067-VCG, 2018 WL 1559936, at *11 (Del. Ch. Mar. 28, 2018) (quoting *Smith v. Mattia*, No. 4498-VCN, 2010 WL 412030, at *5 n.37 (Del. Ch. Feb. 1, 2010)). They are

> (i) a false representation, (ii) the [other party]'s knowledge of or belief in its falsity or the [other party]'s reckless indifference to its truth, (iii) the [other party]'s intention to induce action based on the representation, (iv) reasonable reliance by the [innocent party] on the representation, and (v) causally related damages.

*Prairie Cap. III, L.P. v. Double E Holding Corp.*, 132 A.3d 35, 49 (Del. Ch. 2015). Fraudulent inducement is an affirmative defense to contract enforcement; the party opposing enforcement of the contract bears the burden of persuasion. *Trascent Mgmt. Consulting, LLC v. Bouri*, 152 A.3d 108, 110 (Del. 2016); *Corkscrew Min. Ventures, Ltd. v. Preferred Real Est. Invs., Inc.*, No. 4601-VCP, 2011 WL 704470, at *4 (Del. Ch. Feb. 28, 2011).

Plaintiffs point out that, prior to and at the settlement conference, Defendants threatened to declare bankruptcy if Plaintiffs sought to collect the consent judgments from the Consulting Agreement and Guaranty Cases in a lump sum. Plaintiffs are troubled that, after the parties agreed to settle in accordance with the March 31 Term Sheet, Defendants raised money from their investors and paid "the entire outstanding sum." (D.I. 152 at 9.) Plaintiffs contend that, if they had known during settlement negotiations that Defendants could obtain money from their investors, Plaintiffs would not have agreed to give up their rights to interest, attorney's fees, and a larger portion of the escrow funds. (*Id*. at 8.)

There are multiple problems with Plaintiff's position. For one thing, Defendants' threat to declare bankruptcy if Plaintiff sought to immediately collect on the consent judgment cannot

support a claim of fraudulent inducement.  A threat to declare bankruptcy is a statement of intent.

While a statement of intent might support a claim of fraudulent inducement if the speaker had the

opposite intent,[7] Plaintiffs do not contend—much less offer evidence—that Defendants intended

not to declare bankruptcy when the statement was made or that Defendants' investors had already

developed a plan to supply cash if the parties settled.[8]  *See Berdel, Inc. v. Berman Real Estate

Mgmt., Inc.*, No. 13579, 1997 WL 793088, at *8 (Del. Ch. Dec. 15, 1997) ("An assertion must

relate to something that is a fact at the time the assertion is made in order to be a

misrepresentation." (citing Restatement (Second) of Contracts § 159(a))).     Indeed, the

uncontroverted evidence of record indicates that Defendants would not have been able to obtain

additional funding from their investors had the cases not settled and would have remained unable

to pay the judgments.  (D.I. 146, Ex. 5 at 3–4.)  That alone is fatal to Plaintiffs' position.

Moreover, there appears to be no genuine dispute that Defendants had limited capital and

that their investors could have let Defendants go bankrupt if this case had not settled.[9]  (D.I. 146,

---

[7] *Cf. Winner Acceptance Corp. v. Return on Capital Corp.*, No. 3088-VP, 2008 WL 5352063, at *9–11 (Del. Ch. Dec. 23, 2008).

[8] If anything, the evidence of record points to the opposite.  It is undisputed that the parties continued to negotiate the documents to secure Plaintiffs' interest in the consent judgment balance until mid-May 2021. (D.I. 155, Ex. 2 ¶¶ 8–10.)  Defendants proffered evidence that they ultimately decided to pay the remaining balance "because they were concerned that providing Mr. Luster with a security interest in their real property and intellectual property could lead to additional disputes with or interference by Mr. Luster, which they were eager to avoid" and that their "concern had been exacerbated as a new dispute had recently arisen among the parties when Mr. Luster chose not to return computer parts indisputably belonging to [Defendants] . . . ." (D.I. 153, Ex. D ¶¶ 15, 16.)  Defendants also point to evidence that "[i]n order to fully satisfy the consent judgment owed to Mr. Luster, [Defendants] were required to seek special funding from certain of their investors" and that "[t]hose investors were not obligated to provide any of the funding at issue" but did so because the parties had a settlement agreement that "would bring these matters to a close." (*Id.* ¶¶ 18, 19.)

[9] Plaintiffs' recourse then could have been to try and reach those investors' assets.  But assets of the investors in a Delaware LLC are not normally available to pay the debts of that LLC.

Ex. 2 ¶¶ 18–20; D.I. 154, Ex. A ¶¶ 5–7.)  Plaintiffs do not point to any evidence that Defendants misrepresented facts about their financial situation at that time.

Finally, even if Plaintiffs could demonstrate that Defendants intended to raise cash from investors *if* a settlement were reached, their failure to so inform Plaintiffs would not constitute fraud.  In an arms' length contractual setting, a party has no affirmative duty to speak.  *Prairie Cap. III*, 132 A.3d at 52.  Of course, a party must speak to correct an omission "in order to prevent statements actually made from being misleading." *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983) ("[A]lthough a statement or assertion may be facially true, it may constitute an actionable misrepresentation if it causes a false impression as to the true state of affairs, and the actor fails to provide qualifying information to cure the mistaken belief.").

Here, however, Plaintiffs have not pointed to any statements by Defendants that "cause[d] a false impression as to the true state of" Defendants' business.  *Norton v. Poplos*, 443 A.2d 1, 5 (Del. 1982).  Plaintiffs do not contend, for example, that Defendants falsely represented that their investors lacked assets or that Defendants misrepresented facts relevant to the strength or weakness of a potential veil-piercing case against their investors.  And there is nothing inconsistent about intending to raise capital if a settlement were reached and intending to declare bankruptcy if not.  Thus, there is nothing misleading about mentioning one without raising the other.

In sum, Plaintiffs have failed to establish that they were fraudulently induced into agreeing to the March 31 Term Sheet.

---

6 Del. C. § 18-303(a); *see also Vill. of Arden v. Unity Constr. Co.*, No. 15025, 2000 WL 130627, at *3 (Del. Ch. Jan. 26, 2000).  Plaintiffs do not claim that Defendants misrepresented any facts relevant to the strength or weakness of a potential veil-piercing case against the investors.  (*See* D.I. 152 at 9.)

B.      Consideration

Plaintiffs also argue that any alleged settlement agreement between the parties is void for lack of consideration. I disagree.

Of course, contracts require consideration. *Osborn*, 991 A.2d at 1158. The mere promise to perform a pre-existing legal duty is not valid consideration. *James J. Gory Mech. Contracting, Inc. v. BPG Residential Partners V, LLC*, No. 6999-VCG, 2011 WL 6935279, at *3 (Del. Ch. Dec. 30, 2011) (quoting *First State Staffing Plus, Inc. v. Montgomery Mut. Ins. Co.*, No. 2100-S, 2005 WL 2173993, at *9 (Del. Ch. Sept. 6, 2005)); *Cont'l Ins. Co. v. Rutledge & Co.*, 750 A.2d 1219, 1232 (Del. Ch. 2000) ("A party cannot rely on a pre-existing duty as his legal detriment in an attempt to formulate a contract.").

According to Plaintiffs, because "the settlement of each action is distinct," and because Defendants were under a pre-existing legal duty to pay the consent judgments in the Consulting Agreement and Guaranty Cases, Mr. Luster received nothing in return for his agreement to "forfeit his right to request attorneys' fees, costs and interest" in connection with those two cases. (D.I. 145 at 8–9, D.I. 152 at 10–11.)

I reject the premise of Plaintiffs' argument. The parties did not enter into three separate agreements. They had one agreement that resolved all three actions. Among other things, the term sheet required Defendants to give Plaintiffs half of the contested funds held in escrow. (D.I. 146, Ex. 2 at 2.) That alone is sufficient consideration. *Cf. Equitable Trust Co. v. Gallagher*, 99 A.2d 490, 493 (Del. 1953).

C.      Remedy

Having rejected Plaintiffs' contention that the parties' agreement on the March 31 Term Sheet is unenforceable, I next turn to the remedy.

13

As noted above, between March and July 2021, the parties' counsel negotiated and circulated multiple drafts of a formal, written "Settlement Agreement" to document their agreement on the terms in the March 31 Term Sheet. Defendants ask the Court to order Plaintiffs to "comply with the terms" of the July 7 draft "except for the recharacterization of payment terms to which [Defendants] did not and cannot agree." (D.I. 144 (Proposed Order); D.I. 146 at 15.) Essentially, Defendants contend that the last draft circulated by Plaintiffs before negotiations broke down—minus the disputed characterization of the source of funds paid—is the most complete expression of their agreement and should be enforced. (Tr. 5:10–6:2.) Plaintiffs take the position that, if there were an enforceable agreement, the March 31 Term Sheet established the terms of that agreement. (Tr. 15:9–14.)

I am not persuaded on this record that the parties intended their proposed drafts of the formal, written agreement to be binding. Indeed, the record reflects that Plaintiffs' counsel indicated on more than one occasion that his own proposed revisions were subject to client review and approval. (D.I. 146, Ex. 7 at 2, 5.) That said, I don't need to decide whether the parties agreed on any additional terms not contained in the March 31 Term Sheet because that Term Sheet is consistent with the July 7 draft on all terms material to resolving the disputes currently before the Court.

Defendants want the Court to order Plaintiffs (except Mrs. Luster) to comply with the parties' agreement, which requires Plaintiffs to (among other things) (1) release all claims in all three cases, (2) release all claims for attorney's fees in the Consulting Agreement and Guaranty Cases, and (3) forbear further collection efforts. (D.I. 146, Ex. 2; Tr. 9:9–10:3.) However, there is no need for the formality of issuing an order requiring Plaintiffs to comply with their agreement when the results of their compliance lie within the power of the Court. Because summary

14

enforcement of a settlement agreement is treated as summary judgment under Federal Rule of Civil Procedure 56, the Court has inherent power to dismiss cases when an enforceable settlement agreement requires dismissal. *See Tiernan*, 923 F.2d at 1031–32; *see also, e.g., Newton v. Rumery*, 480 U.S. 386, 398 (1987) (affirming dismissal to enforce settlement agreement); *Shelley v. Somerset Cty. Jail*, 581 Fed. App'x 126, 128 (3d Cir. 2014) (same). Similarly, the Court has power to deny a motion for attorney's fees and to order relief from a satisfied judgment. Fed. R. Civ. P. 54(d)(2)(A), 60(b)(5). Accordingly, the Court will (1) dismiss the Escrow Case, (2) deny Mr. Luster's pending motions for attorney's fees and costs in the Consulting Agreement and Guaranty Cases, and (3) enter an order that Defendants are relieved from Mr. Luster's now-satisfied consent judgments in the Consulting Agreement and Guaranty Cases[10]—all as if Plaintiffs had complied as they ought to have.

The March 31 Term Sheet contemplated that the Court would retain jurisdiction over disputes regarding the parties' compliance with the settlement terms. (*See, e.g.*, D.I. 146, Ex. 2 ("If future Performance Compensation Payments are more than 3 weeks late, Bill Luster may contact the Court and request an Order directing payment . . . .")). Given the parties' history, the Court recognizes that future disputes may arise regarding other terms set forth in the March 31

---

[10] During oral argument on the pending motions, Plaintiffs argued for the first time that Defendants failed to pay the entire settlement amount. According to Plaintiffs, they expected 18 months of interest on the $1,024,218.19 consent judgment balance at a rate of 3%, but Defendants only paid the interest that had accrued on June 18, 2021, when they paid off the outstanding balance. As an initial matter, Plaintiffs failed to make the argument in their briefs and it is therefore waived.

Even if Plaintiffs' argument were not waived, I would reject it. There is no support in the March 31 Term Sheet for Plaintiffs' apparent assertion that the settlement balance was subject to a prepayment penalty. (Indeed, Plaintiffs do not dispute that, in a June 21, 2021 status call with the Court to discuss why the agreement had not yet been finalized, the only substantive issue raised by Plaintiffs related to future performance compensation payments. And, on June 25, Plaintiffs' counsel circulated a draft settlement agreement that had been updated to reflect that all the settlement payments had been made.)

Term Sheet or whether the parties agreed on additional settlement terms not set forth in the term sheet. Accordingly, the Court retains jurisdiction over future claims and disputes arising out of or relating to the parties' settlement agreement. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 381–82 (1994).

### D. Attorney's Fees

Finally, Defendants ask the Court to order Mr. Luster to pay their attorney's fees and costs incurred in connection with the motion to enforce. (D.I. 146 at 15.) In support of their request, Defendants cite 28 U.S.C. § 1927 and the Court's "inherent power."

Section 1927 does not support an award of attorney's fees against Mr. Luster. That section authorizes Courts to require opposing counsel to pay attorney's fees. 28 U.S.C. § 1927 ("Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."). Defendants have provided the Court no legal basis for holding that Mr. Luster can be required to pay fees under § 1927.

The Court does have inherent power to order a party to pay another party's attorney's fees "in extraordinary cases." *Hobbs v. Am. Inv'rs Mgmt., Inc.*, 576 F.2d 29, 35 n.18 (3d Cir. 1978) (quotation omitted). But the Court is unpersuaded that Mr. Luster "acted in bad faith, vexatiously, wantonly, or for oppressive reasons," so as to support an award of fees here. *Id.* Having considered the totality of the record before the Court, I cannot find that Mr. Luster's arguments were wholly frivolous or that he acted in bad faith during the settlement process.

IV.     **CONCLUSION**

The Court will enforce the March 31 Term Sheet. The Escrow Case is dismissed with prejudice. Mr. Luster's motions for attorney's fees and costs in the Consulting Agreement and Guaranty Cases are denied. Defendants are relieved from judgments in favor of Mr. Luster in the Consulting Agreement and Guaranty Cases because they have been satisfied. Defendants' request for attorney's fees and costs are denied. An appropriate order follows.